IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Monte Lee Bridges,

    Plaintiff,                          No. CIV S-04-0274 FCD CMK P

   vs.

D.L. Runnels, et al.,

    Defendant.                     <u>ORDER AND</u>

                                             <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Currently before the court is plaintiff's "Objections to Order" filed on May 25, 2005. In light of plaintiff's filing, the court vacates both its January 20, 2005 and its May 10, 2005 order and issues the following findings and recommendations.

        On January 12, 2005, plaintiff filed a motion for a preliminary injunction. On January 20, 2005, the court denied plaintiff's request without prejudice due to failure to serve the document on defendants. On January 31, 2005, plaintiff filed a request to reinstate his motion for a preliminary injunction and on April 4, 2005, plaintiff filed a request for expedited action on his request for a preliminary injunction. On May 10, 2005, the court denied plaintiff's request. On May 25, 2005, plaintiff filed objections to the court's May 10, 2005 order reiterating that he had in fact properly served his January 12, 2005 motion on defendants. Upon review of the

record, the court discovered that plaintiff did properly serve his January 12, 2005 motion on defendants, although the certificate of service was attached to the affidavit in support of the motion instead of to his motion. Accordingly, the court considers the merits of plaintiff's motion for a preliminary injunction.

Background

Plaintiff is confined at High Desert State prison in Susanville. He filed this complaint on February 6, 2004, seeking damages and injunctive relief from ten defendants. In an order filed May 13, 2004, the court denied plaintiff's request for an expedited preliminary injunction and recommended that plaintiff's claims against four of the defendants be dismissed. (Doc. 9.) On June 6, 2004, the District Judge issued an order adopting the May 13, 2004 findings and recommendations in full and stating that this case shall proceed solely on plaintiff's Eighth Amendment Claims against the remaining six defendants. (Doc. 13.)

In his complaint, plaintiff states that he is a sixty-six year old man who has suffered from extreme anxiety since he had quadruple heart bypass surgery in 1992 and that he arrived at High Desert State prison in 2001 with a legal addiction to an anxiety medication. He alleges, among other things, that he has had twenty-one cellmates since 2001, most of whom have smoked, which exacerbates plaintiff's anxiety, raises his blood pressure and causes him to have trouble breathing and to experience nausea, headaches and eye irritation. Plaintiff states that since 2002 he has suffered from an earache caused by the earplugs that he wears constantly to deaden cellmate noise and that he has been deprived of adequate exercise repeatedly during lengthy lockdowns. Plaintiff's anxiety caused by cellmates and his lack of exercise are the focus of his January 12, 2005 request for injunctive relief.

Plaintiff's January 12, 2005 injunctive relief request states that "after years of lockdown confinement with no out-of-cell exercise causing mental and physical atrophy, plaintiff has been forced to work or receive discipline." (Plaintiff's Motion for Preliminary Injunction at

2

2.) Plaintiff states that he is being denied single-cell status, despite the recommendation of two doctors that he receive single cells status.  In an April 4, 2005 filing seeking expedited action on his preliminary injunction, plaintiff relates that "if he is not put on single-cell status soon, he will be killed or forced to kill.  Plaintiff alleges that he is suffering injuries from being denied soft sole shoes, which two doctors recommended for him.  Plaintiff states that he has been denied entry into the mental health program despite "extensive street records of his condition" and that he has been denied meaningful health care for almost four years, specifically that he has not received treatment for a back and hip problem.  Plaintiff alleges, that, in complete disregard to his medical problems, he has been forced to work at "hard labor" spending six hours a day standing and walking on a concrete floor while wearing work (non-soft sole) shoes.

Plaintiff seeks a preliminary injunction permanently placing him on single-cell status, classification as medically disabled, neutral physical exams and appropriate treatment, one hour of out-of-cell exercise daily, including during lockdown periods, a permanent soft shoe chrono and judgment for compensatory and punitive damages.

A review of the exhibits attached to plaintiffs complaint reveal the following. Plaintiff filed a grievance requesting a chrono to wear soft shoe (athletic shoes) due to venous insufficiency of his left leg as a result of vein harvesting for cardiac by-pass surgery.  (Pl.'s Compl. ex. 1.)  The request was reviewed by a clinic physician who recommended that plaintiff have TED (support) hose to control the swelling in his left leg and a chrono that plaintiff be allowed to wear athletic shoes "behind the wall" be considered.  (Id.)  The chrono committee considered this request and denied it.  (Id.)  Plaintiff appealed. (Id.)  His appeal was denied on the grounds that plaintiff was allowed to wear athletic shoes on the yard and housing unit but not to vocational, visiting or to the medical clinic.  (Id.)  Plaintiff was recommended to have and granted an appointment with a vascular surgeon.  (Id.)  Plaintiff's appeal to the director's level was denied on the grounds that he was allowed to wear athletic shoes at certain times and recommended that plaintiff cooperate with the health care staff to ensure the proper diagnosis

1 and treatment of his medical condition. (Id.)

2        Exhibit 2 to plaintiff's complaint is a copy of an accusation against Jeffrey W. Rohlfiing, M.D and a copy of a stipulated agreement between Dr. Rohlfing and the Division of Medical Quality of the Medical Board of California. (Id., Ex. 2.)  Exhibit 3 is a narrative written by plaintiff describing prison lockdowns and numerous receipts from cell searches. (Id., Ex. 3.) Exhibit 4 relates to plaintiff's requests for single cell housing. (Id., Ex. 4.)  In his grievance, plaintiff described his disability as heart disease, left arm eighty percent disabled, sciatica, anxiety, panic disorder, agoraphobia, dysthymia, sun sensitive, melanoma. (Id.)  The accommodation requested by plaintiff was single cell status.  (Id.)  A memorandum detailing an interview with plaintiff revealed that Dr. Watson had told a correctional lieutenant that plaintiff had extreme phobia and that the doctor strongly recommended that plaintiff be single celled. (Id.)  However, Mental Health denied single cell status. (Id.)  On September 4, 2002, plaintiff received an amended second level appeal response, which stated that Dr. Watson had indicated that plaintiff's case should be sent to the psychiatric department for review for single cell status but that, upon review the psychiatric department had denied plaintiff's request. (Id.)  The amended response noted that plaintiff was not a participant in the mental health services delivery system and that, after a review of all the submitted evidence, it was determined that plaintiff did not meet the criteria for single cell housing. (Id.)

19        Plaintiff filed a director's level appeal regarding his denial of single cell status. (Id.)  The director's level appeal was denied on the grounds that plaintiff's case factors did not warrant single cell status. (Id.)  The denial stated that the medical department and psychiatric department indicated that plaintiff did not meet the criteria for single cell status at this time. (Id.)

23        Exhibit five to plaintiff's complaint is a second grievance concerning single cell

1  housing filed by plaintiff on April 24, 2003.[1]  (Id., Ex. 5.)  In his grievance, plaintiff alleges that
2  he has been mistreated by guards after requesting to move from his cell block.  (Id.)  He stated
3  that doctors have recommended single cell housing for him and that he has many health concerns
4  that are exacerbated by his current housing.  (Id.)  Plaintiff requested to be moved from "this
5  area–preferably upstairs in any unit."  (Id.)  On May 15, 2003, plaintiff's portion of his appeal
6  that he be moved to a new bed was granted, but his request to be placed on single cell was
7  denied.  (Id.)

8  Exhibits six and seven of plaintiff's complaint are copies of "emergency medical
9  requests" regarding his back pain.  (Pl.'s Compl., Ex. 6 & 7.)  Included in exhibit seven is a
10 grievance filed by plaintiff regarding his back pain, and requesting that he see a new doctor,
11 receive immediate action to be provided meals in his cell, receive time each day in the day room
12 or to be allowed out of his cell to try and walk, and be provided a single crutch instead of a cane.
13 (Pl.'s Compl., Ex. 7.)  Plaintiff received a note from the appeals office that his appeal was not
14 processed as an emergency appeal because it did not meet the criteria for such.  (Id.)  It is not
15 clear from the evidence what the final resolution of this grievance was.  (Id.)

16 Exhibit eleven to plaintiff's complaint includes a modification request stating that
17 plaintiff has a disability in his left leg due to vein harvesting and foot problems.  (Pl.'s Compl.
18 Ex. 11.)  Plaintiff requested the modified low-cut institution shoes for which he had been issued a
19 chrono and the stress test which had been recommended by a physician.  (Id.)  Plaintiff also noted
20 that he had a painful right ear and sought to have all his problems addressed as soon as possible.
21 (Id.)  Plaintiff's request was partially granted.  (Id.)  The response noted that plaintiff had been

---

[1] Plaintiff filed a second grievance on May 8, 2003, requesting that he be moved immediately, but this grievance was screened out by the appeal coordinator as a duplicate appeal. (Pl.'s Compl. Ex. 5.)

1  issued his modified shoes on April 2, 2002², that the medical authorization review ("MAR")
2  committee had voted to defer plaintiff's stress test because his cardiac condition appeared to have
3  stabilized and stated that he would be granted an appointment with an ear, nose and throat
4  specialist. (Id.) The response noted, however, that the stress test was still under consideration by
5  the committee. (Id.) Plaintiff appealed the first level response on the grounds that he was
6  dissatisfied that the stress test was deferred by the MAR committee. Plaintiff noted in his appeal
7  that, prior to coming to prison, he was taking the medications Plavix, Pravachol and Lipitor and
8  he was not experiencing heart problems until those medications were taken from him by prison
9  officials. (Id.) The response to plaintiff's second level appeal noted that all specialty
10 appointments had to be approved by MAR and that MAR had voted to defer plaintiff's stress
11 test. (Id.) Plaintiff was advised that should he have further questions about that action, he should
12 discuss it with the clinic physician. (Id.) Finally, the response listed the medications that
13 plaintiff was currently taking in prison and stated that, while these medications may be different
14 than the ones he previously took, they had the same effect. (Id.) Plaintiff appealed to the
15 director's level and the director's level decision affirmed the second level review decision, noting
16 that plaintiff was receiving appropriate medical care. (Id.)

17           Exhibit twelve to plaintiff's complaint is a grievance concerning skin lesions.
18 (Pl.'s Compl., Ex. 12.) The staff response noted that plaintiff's request for plastic surgery was
19 previously denied and he was supposed to get skin biopsies. (Id.) It stated that his plastic surgery
20 request would be re-submitted to MAR, that Dr. Watson's request that plaintiff receive a heat-
21 sensitive chrono would be presented to the chrono committee on August 28 and that plaintiff was
22 granted a double cuff chrono. (Id.) Plaintiff contacted the Office of the Inspector General
23 regarding his skin lesions, and received a response that the Inspector General had contacted the
24 prison and learned that plaintiff was scheduled for skin biopsies in the near future. (Id.)

---

²On the response, plaintiff crossed out "2" and wrote "1" above it. (Pl.'s Compl., Ex. 11.)

Exhibit thirteen to plaintiff's complaint is a grievance filed concerning plaintiff's ear aches, apparently caused by constant wearing of ear plugs to deaden cell noise. (Pl.'s Compl., Ex. 13.) Plaintiff requested medication for his ear problem. (Id.) The staff response noted that plaintiff had been prescribed eardrops previously, but had not been prescribed ear drops in 2003. (Id.) Plaintiff appealed to the second level and the appeal was granted on the grounds that plaintiff had already been examined by Dr. Rohlfing and received the requested ear medication. (Id.)

Standard of Review

The legal principles applicable to a request for preliminary injunctive relief are well established. "The traditional equitable criteria for granting preliminary injunctive relief are: 1) a strong likelihood of success on the merits; 2) the possibility of irreparable injury to plaintiff; 3) a balance of the hardships favoring the plaintiff; and 4) advancement of the public interest (in certain cases)." Dollar Rent A Car v. Travelers Indem. Co., 774 F.2d 1371, 1374 (9th Cir. 1985). The criteria are traditionally treated as alternative tests. For example, a court may issue a preliminary injunction if the moving party demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor. See Martin v. Int'l Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984). The Ninth Circuit has reiterated that under either formulation of the principles, if the probability of success on the merits is low, preliminary injunctive relief should be denied:

> Martin explicitly teaches that "[u]nder this last part of the alternative test, even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits."

Johnson v. California State Bd of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995)(quoting Martin, 740 F.2d at 675. In cases involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the

7

court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

Discussion

In determining whether injunctive relief is appropriate, the focus of the court's inquiry is on the likelihood of plaintiff's success on the merits of his complaint. See Martin, 740 F.2d at 675. Plaintiff's complaint is proceeding solely on Eighth Amendment claims.

The Eighth Amendment requires prison officials to provide prisoners with necessary medical care. See Estelle v. Gamble, 429 U.S. 97, 103 (1976). However, the mere failure to provide medical care does not give rise to a constitutional violation. See Wilson v. Seiter, 501 U.S. 294, 297 (1991). To establish an Eighth Amendment violation an inmate must satisfy a two-prong test that includes an objective and subjective element. See Helling v. McKinney, 509 U.S. 25, 31 (1993). He must show: 1) that he suffered from a serious medical condition; and 2) that prison officials were "deliberately indifferent" to the prisoner's medical needs. See Wilson, 501 U.S. at 297.

An injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities or the existence of chronic and substantial pain are indications that a patient has an objectively "serious" need for medical treatment. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992)(abrogated on other grounds). Plaintiff has shown that a reasonable doctor or patient would find his cardiac complaints, skin lesions and ear pain worthy of treatment and he has shown that his foot problems affect his daily living and apparently cause him chronic pain. Accordingly, plaintiff demonstrates a strong likelihood of demonstrating that he has a serious medical condition. See id. Plaintiff has not, however, demonstrated a strong likelihood of demonstrating that defendants' responses to that need were constitutionally deficient.

8

1    The evidence shows that prison officials responded to plaintiff's medical needs.
2 When plaintiff requested a chrono to wear soft sole shoes due to his vascular problem, plaintiff
3 was granted a chrono for a TED device to reduce swelling in his legs, but was denied his request
4 to wear soft sole shoes in all areas of the prison. Plaintiff received medical care for his cardiac
5 problem, and although he was not granted a stress test because objective evidence indicated that
6 his condition was improving, he was informed that he could discuss this issue further with his
7 physician. Plaintiff was granted an appointment with an ear, nose and throat specialist after his
8 complaints about an ear problem, and in response to another grievance, he was allowed to visit
9 the prison physician and received medication. The record shows that although prison officials
10 did not respond the way that plaintiff perhaps would have wanted them to respond, they did in
11 fact respond to his medical issues. See e.g., Estelle, 429 U.S. at 106 (the Eighth Amendment
12 does not protect prisoners from diagnosis or treatment that is merely negligent.)   Given the
13 evidence, there is not a high likelihood of success that plaintiff can demonstrate deliberate
14 indifference to his medical needs in violation of the Eighth Amendment. See Toussaint v.
15 McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986.)

16    The record shows that defendants have responded to plaintiff's concerns about his
17 medical care with treatment, and the court cannot find that plaintiff has demonstrated a
18 likelihood of irreparable injury if injunctive relief is not granted. See Dollar Rent a Car, 774
19 F.2d at 1374. Plaintiff has not shown that serious questions of public interest are raised and that
20 the balance of hardships tips in his favor. See Martin, 740 F.2d at 675. Accordingly, injunctive
21 relief is not appropriate.

Conclusion

23    Based on the foregoing, it is ORDERED THAT the court's orders of January 20,
24 2005 and May 10, 2005 are vacated.

25    IT IS RECOMMENDED THAT the plaintiff's motion for preliminary injunctive
26 relief be denied. These findings and recommendations are submitted to the United States

9

District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 6, 2005.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE