1
2
3
4
5
6
7
8                        IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MONTE LEE BRIDGES,

11              Plaintiff,                    No. CIV S-04-0274 FCD CMK P

12         vs.

13   D.L. RUNNELS, et al.,

14              Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16              Plaintiff is a state prisoner, without counsel, prosecuting this civil rights action

17   against several employees of High Desert State Prison (HDSP).  The case is before the

18   undersigned pursuant to Local Rule 302(c) for findings and recommendations on the motion for

19   summary judgment filed by defendants Baron, Sandham, Exum and Briddle.[1]  Fed. R. Civ. P

20   56(c).

21   I.    Standard of Review

22              On a motion for summary judgment pursuant to Rule 56(c), the court must

23   accept the evidence of the non-moving party as true and draw all reasonable inferences of fact in

24   favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

25   _____

26         [1]Defendant Rohlfing filed a separate motion for summary judgment, which the court
      recommended be granted in separately filed findings and recommendations.

                                            1

1    The moving party bears the burden of demonstrating that there exists no genuine issue as to any

2    material fact and that the moving party is entitled to judgment as a matter of law.  See Celotex

3    Corp v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P 56(c)).  If the moving party

4    meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue

5    as to any material fact does actually exist.  See Matsushita Elec. Indus. Co. V. Zenith Radio

6    Corp., 475 U.S. 574, 586 (1986).  The party opposing summary judgment may not rest on

7    conclusory allegations, but must set forth specific facts showing that there is a genuine issue of

8    material fact.  See Mosher v. Saalfeld, 589 F.2d 438, 422 (9th Cir. 1978)(involving a pro se

9    litigant); see also Anderson, 477 U.S. at 586 n. 11.  When the record taken as a whole could not

10   lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material

11   fact for trial.  See Matsushita, 475 U.S. at 587.

12          On August 25, 2004, the court advised plaintiff of the requirements for opposing a

13   motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

14   F.3d 952 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

15   I.    Background

16          At all times relevant to this action, plaintiff was an inmate at HDSP.  He filed this

17   action on February 26, 2004, alleging various civil rights violations against several HDSP

18   employees. On June 8, 2004, the court ordered service on several defendants, including defendant

19   Rohlfing, and ordered that the case proceed only on plaintiff's Eighth Amendment claims against

20   those defendants.  Because the instant motion concerns only plaintiff's claims against defendants

21   Baron, Sandham, Exum and Briddle, the factual discussion is limited to the allegations against

22   these defendants.

23          Planiff alleges that he suffers from pain in his back, hip and legs, which he

24   believes is due to being forced to wear ill-fitting prison shoes. Plaintiff alleges that he suffers

25   from severe pain when he walks, often collapses when walking, and needs a cane, crutches, or a

26   ///

1   wheelchair in order to move about.  Plaintiff further states that he has a venous insufficiency in

2   his left leg and suffers from foot problems.

3            In 2002, plaintiff submitted requests to prison authorities for single-cell status,

4   cell-feeding, and a permanent soft shoe chrono that would permit him to wear his athletic shoes in

5   all parts of HDSP.  Plaintiff alleges that these requests were denied by HDSP's chrono

6   committee.  The chrono committee consisted of available staff physicians, who would meet

7   weekly to decide upon the appropriateness of proposed medical requests, otherwise known as

8   chronos.  Plaintiff admits that he does not know the identities of the chrono committee members

9   who denied him a soft shoe chrono and a single-cell chrono.  (Defs' Statement of Undisputed

10  Material Facts at ¶ 13.)

11           In 2002, defendant Exum was part of a mental health team that assessed plaintiff

12  and determined that there was no medical necessity for plaintiff to have single-cell status.

13  Defendant Briddle, the facility captain, determined in 2002 that there was no custodial necessity

14  for plaintiff to have single-cell status and deferred to the medical staff who determined that there

15  was no medical need for plaintiff to have single-cell housing.  Defendant Briddle also denied

16  plaintiff's requests for cell-feeding, that is being fed his meals in his cell instead of going to the

17  "chow hall."

18           Plaintiff asserts that defendants' denial of single-cell status, a permanent soft-shoe

19  chrono, and cell-feeding constituted deliberate indifference to plaintiff's medical needs in

20  violation of the Eighth Amendment.

21  III.    Discussion

22           Defendants Baron, Sandham, Exum, and Briddle move for summary judgment on

23  the grounds that plaintiff cannot show that they were deliberately indifferent to his medical needs

24  in violation of the Eighth Amendment.

25           Prison officials violate the Eighth Amendment when they are deliberately

26  indifferent to a prisoner's medical needs.  See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.

1992) (overruled on other grounds).  Deliberate indifference to a prisoner's medical needs can be demonstrated in two ways: by prison officials denying, delaying or intentionally interfering with medical treatment or by the manner in which prison physicians provide medical care. Estelle v. Gamble, 429 U.S. 97 (1976); Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). Deliberate indifference exists only when prison officials know of and disregard an excessive risk to inmate health or safety.  Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also, McGuckin, 974 F.2d at1060).  "Mere negligence... in treating a medical condition, without more, does not violate a prisoner's Eighth Amendment right."  See Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).  Deliberate indifference may be shown with circumstantial evidence when the facts are sufficient to show that defendant actually knew of a risk of harm.  See Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003).  A prisoner who makes a claim of deliberate indifference to a serious medical condition based on delay must show that the delay resulted in substantial harm.  Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990).

Disagreement over the course of treatment, or mere negligence in treatment does not raise to the level of an Eighth Amendment violation.  See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  To establish that a difference of opinion amounted to deliberate indifference, the prisoner must "show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that "they chose this course in conscious disregard of an excessive risk to [the prisoner's] health.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

A. Defendants Baron's And Sandham's Alleged Denial of Medical Requests

Defendants Baron and Sandham move for summary judgment on plaintiff's Eighth Amendment claims against them on the grounds that plaintiff cannot link them to the alleged deprivation of his rights.  Defendants Baron and Sandham are Chief Medical Officers at HDSP, and they argue that plaintiff attempts to hold them liable for his alleged injuries by virtue of their supervisory positions.

///

4

1     A plaintiff must connect the named defendants clearly with the claimed denial of

2  his rights.  Farmer, 511 U.S. at 843 (official's liability for deliberate indifference to assault

3  requires that official know of and disregard an "excessive risk"); Taylor v. List, 880 F.2d 1040,

4  1045 (9th Cir. 1989) ("liability under section 1983 arises only upon a showing of personal

5  participation by the defendant (citation omitted) . . . [t]here is no respondeat superior liability

6  under section 1983."); Johnson v. Duffy, 588 F.3d 740, 743-44 (9th Cir. 1978) (discussing

7  "requisite causal connection" in section 1983 cases between the named defendant and claimed

8  injury);  Barren v. Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998), cert. denied, 525 U.S.

9  1154 (1999) ("A plaintiff must allege facts, not simply conclusions, that show that an individual

10  was personally involved in the deprivation of his civil rights.").  When a named defendant holds a

11  supervisory position, the casual link between the defendant and the claimed constitutional

12  violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979).

13     Here, plaintiff is unable to present any evidence that defendants Baron and

14  Sandham denied his requests for single-cell status and a permanent soft shoe chrono.  Neither

15  defendant Baron nor defendant Sandham have any recollection of being on the chrono committee

16  which denied plaintiff's requests.  Plaintiff has only alleged conclusory facts to indicate that these

17  two defendants were part of the chrono committee which denied his requests, and, he admits that

18  he does not know the identities of the chrono committee members who denied him a soft shoe

19  chrono and a single-cell chrono.  (Defs' Statement of Undisputed Material Facts at ¶ 13.)

20  Although in his opposition to the instant motion for summary judgment, plaintiff states that

21  defendant Sandham was "action C.M.O. and a high level staff physician.  It stands to reason that

22  he was involved in all important decisions."  (Opp'n (doc. 110-3) at 2:11-14.)   However, such

23  conclusory allegations are not enough to establish a causal link between a defendant and an

24  alleged constitutional deprivation.  See Barren, 152 F.3d at 1194-95; Fayle, 607 F.2d at 862.

25  ///

26  ///

1    Plaintiff also argues that defendants Baron and Sandham were personally involved
2    in the denial of his medical requests in violation of the Eighth Amendment because both
3    defendants signed first and second level requests denying plaintiff's requests.  (Opp'n (doc. 110-3
4    at 2:3-6 and 13-18.  The Ninth Circuit has stated that inmates have no legitimate claim of
5    entitlement to a prison grievance procedure.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir.
6    1988).  Accordingly, to the extent that plaintiff seeks to impose liability on defendants Sandham
7    and Baron for their roles in the appeal process, plaintiff does not state a cognizable constitutional
8    claim.  The failure of prison officials to properly implement an administrative process within the
9    prison system does not raise constitutional concerns.  See id. at 640; see also, Ramirez v. Galaza,
10   334 F.3d 850, 860 (9th Cir. 2003).

11   Even assuming arguendo that plaintiff could link defendant Baron and defendant
12   Sandham to the alleged denial of his medical requests, the refusal to grant plaintiff's medical
13   requests did not constitute deliberate indifference.  Plaintiff has not established that either
14   defendant Baron or defendant Sandham acted with a sufficiently culpable state of mind—criminal
15   recklessness, in their alleged participation in the denial of plaintiff's medical requests.
16   See Farmer, 511 U.S. at 835-836; Toguchi, 391 F.3d at 1057.  At most, plaintiff has shown that he
17   disagreed with the decisions of the chrono committee.  Disagreement over the course of
18   treatment, or mere negligence in treatment does not rise to the level of an Eighth Amendment
19   violation.  See Sanchez, 891 F.2d at 242.  To establish that a difference of opinion amounted to
20   deliberate indifference, the prisoner must "show that the course of treatment the doctors chose
21   was medically unacceptable under the circumstances" and that "they chose this course in
22   conscious disregard of an excessive risk to [the prisoner's] health.  Jackson v. McIntosh, 90 F.3d
23   330, 332 (9th Cir. 1996).  Here, plaintiff has not demonstrated that the course of treatment chosen
24   by the chrono committee was medically unacceptable and chosen in conscious disregard to an
25   excessive risk to plaintiff's health.
26   ///

1    The court finds that plaintiff cannot link defendant Baron or defendant Sandham to

2   the alleged deprivation of his Eighth Amendment rights, and that, even if these defendants could

3   be linked to the denial of plaintiff's medical requests, the denials do not form the basis for a

4   constitutional violation.  Accordingly, the court recommends that the motion for summary

5   judgment be granted as to the claims against defendants Baron and Sandham.

6         B.    Defendant Exum's Denial Of Request For Single-Cell Status

7    Plaintiff claims that defendant Exum violated his Eighth Amendment rights by

8   denying his request for single-cell status.  Dr. Exum was part of a mental health team that

9   assessed plaintiff in July 2002 and determined that there was no medical necessity for single-cell

10  housing for plaintiff.  (Defs' Statement of Undisputed Material Facts at ¶22.)  Although the

11  single-cell status for plaintiff was denied, the committee recommended an anti-anxiety medication

12  for plaintiff's symptoms, but plaintiff declined even a therapeutic trial.  (Id.)

13   The undisputed facts show that defendant Exum felt that it was within the

14  appropriate standard of medical care to recommend that plaintiff not be given single-cell status

15  and that plaintiff disagreed with that conclusion.  Plaintiff presents evidence, in the form of

16  pertinent portions of his deposition testimony, which indicate that other doctors, namely Dr.

17  Brown and Dr. Bill recommended single-cell status for plaintiff.  Specifically, plaintiff alleges

18  that defendant Exum stated that "[he] could help plaintiff, but [he wouldn't].  (Opp'n, Ex. F (doc.

19  110) at *77.)

20   As noted above, disagreement over the course of treatment, or mere negligence in

21  treatment does not raise to the level of an Eighth Amendment violation.  See Sanchez, 891 F.2d at

22  242.  To establish that a difference of opinion amounted to deliberate indifference, the prisoner

23  must "show that the course of treatment the doctors chose was medically unacceptable under the

24  circumstances" and that "they chose this course in conscious disregard of an excessive risk to [the

25  prisoner's] health.  Jackson, 90 F.3d at 332.  Here, plaintiff asserts in his opposition that other

26  physicians felt that he should have been granted single cell status.  (Opp'n (doc. 110-3) at 3: 17-

7

23.)   However, plaintiff has not met his burden of demonstrating that the course of treatment

chosen by defendant Exum and the mental health committee was medically unacceptable and

chosen in conscious disregard of an excessive risk to plaintiff's health.  See id.   Further, plaintiff

has not shown that he suffered any injury as a result of the denial of single-cell housing, although

he does make conclusory statements about the "resulting stress [of being double-celled] has had

devestating effects on plaintiff's heart."  (Opp'n (doc. 110-1) at 5 ¶ 12-19.  However, this is not

enough to demonstrate a cognizable injury .  See McGuckin, 974 F.2d at 1059.)

Accordingly, the court finds that there is no genuine dispute of material fact

concerning whether defendant Exum was deliberately indifferent to plaintiff's medical needs.

The court recommends that summary judgment be granted as to plaintiff's claim against

defendant Exum.

C.      Defendant Briddle's Denial Of Request For Single-Cell Status

Plaintiff claims that defendant Briddle violated his Eighth Amendment rights by

denying his request for single-cell status.  The facts show that defendant Briddle reviewed

plaintiff's central file on three to five occasions to determine plaintiff's suitability for single-cell

or double-cell housing, according to case factors set forth in the CDCR policies and procedures,

including the Department Operations Manual (DOM).  (Defs' Statement of Undisputed Material

Facts at ¶ 26.)  Based on the review of plaintiff's central file, the CDCR policies, and the DOM,

defendant Briddle determined that there was no custodial necessity for plaintiff to receive single

cell status.  Plaintiff was not a sexual predator toward other inmates, did not have a history of in

cell violence, and there were no enemy concerns that would prevent him from being safely

housed in a double-cell.  (Id.)  Defendant Briddle deferred to the medical staff with respect to the

issue of plaintiff's single-cell housing for health related issues. ( Id. at ¶ 27.)

On the issue of cell-feedings, defendant Briddle deferred to medical staff, who

determined that cell-feedings for plaintiff were not medically necessary.  (Id. at ¶ 28.)  Defendant

Briddle facilitated and attended a meeting between plaintiff and defendant Rohlfing during which

8

1  defendant Rohlfing stated that cell-feedings were not necessary because plaintiff could wear his

2  tennis shoes instead of his boots to the chow hall.  (Id.)

3          In his opposition to defendants' motion for summary judgment, plaintiff argues

4  that defendant Briddle was "largely responsible for many of the lockdowns at HDSP and points

5  the court to exhibit F of his opposition.  (Opp'n (doc. 110-3) at 3:26-28 and 4.)   Exhibit F is an

6  excerpt from plaintiff's deposition, and a reading of the pertinent portion reveals that plaintiff

7  discussed his medical requests with defendant Briddle and did not agree with defendant Briddle's

8  response.  As noted above, disagreement over the course of treatment, or mere negligence in

9  treatment does not raise to the level of an Eighth Amendment violation.  See Sanchez, 891 F.2d at

10  242.  To establish that a difference of opinion amounted to deliberate indifference, the prisoner

11  must "show that the course of treatment the doctors chose was medically unacceptable under the

12  circumstances" and that "they chose this course in conscious disregard of an excessive risk to [the

13  prisoner's] health.  Jackson, 90 F.3d at 332.  Plaintiff has not shown that defendant Briddle

14  pursued a medically unacceptable course of action or that defendant Briddle's actions caused

15  plaintiff harm.  Accordingly, the court recommends that summary judgment be granted with

16  respect to plaintiff's claims against defendant Briddle.

17          D.      Lockdowns And Denial Of Out-Of-Cell Exercise

18          In his complaint and in his opposition to defendants' motion for summary

19  judgment, plaintiff makes reference to lockdowns at HDSP and a lack of exercise.  Deprivation of

20  outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and

21  long-term segregation.  See Keenan v. Hall, 83 F.3rd 1083, 1089 (9th Cir. 1996).  A temporary

22  denial of outdoor exercise with no medical effects is not a substantial deprivation.  See May v.

23  Baldwin, 109 F.2nd 557, 565 (9th Cir. 1997).

24          Here, plaintiff has made only very general conclusory allegations that a denial of

25  exercise has lead to adverse medical effects.  (Complaint at ¶ 46-47.)  Further, he has not

26  adequately linked defendant Briddle to the lockdowns at HDSP; therefore, defendant Briddle

1  cannot be held liable for the alleged injury due to lockdowns and lack of exercise.  See Johnson,

2  588 F.3d at 743-44 (discussing "requisite causal connection" in section 1983 cases between the

3  named defendant and claimed injury);  Barren, 152 F.3d at 1194-95 ("A plaintiff must allege

4  facts, not simply conclusions, that show that an individual was personally involved in the

5  deprivation of his civil rights.").

6          Accordingly, the court recommends that summary judgment be granted as to

7  plaintiff's claims against defendant Briddle.

8  IV.    Conclusion

9          Based on the foregoing, IT IS RECOMMENDED that:

10         1.  Defendants' motion for summary judgment (doc. 102) be granted in its entirety.

11         2.  That this action be dismissed with prejudice[2].

12         These findings and recommendations are submitted to the United States District

13 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

14 twenty days after being served with these findings and recommendations, any party may file

15 written objections with the court and serve a copy on all parties.  Such a document should be

16 captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

17 objections shall be served and filed within ten days after service of the objections.  The parties are

18 advised that failure to file objections within the specified time may waive the right to appeal the

19 District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20
   DATED:  May 9, 2007.

21

22

23                                          CRAIG M. KELLISON
                                            UNITED STATES MAGISTRATE JUDGE
24

25
          [2]By separate findings and recommendations, the court recommended that summary
26  judgment be granted in favor of the only other remaining defendant, defendant Rohlfing.